**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3966-17T3

JOSEPH OETTINGER, JR.,

     Plaintiff-Appellant,

v.

BOHDAN IWASKIW, Individually
and as Guardian Ad Litem for
ALEXANDER IWASKIW, a minor
person, JOANNE BILANICZ, a/k/a
JOANNE IWASKIW, ALEXANDER
IWASKIW, a minor person, NOEL
CHARRON, and VICTORIA SCALLO
CHARRON,

     Defendants-Respondents.

_____

          Submitted March 26, 2019 – Decided April 8, 2019

          Before Judges Fisher and Hoffman.

          On appeal from Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000059-17.

          Joseph Oettinger, Jr., appellant pro se.

Law Office of Patricia Palma, attorneys for respondent Bohdan Iwaskiw (Jean A. Di Paolo, on the briefs).

Morris, Downing & Sherred, LLP, attorneys for respondents Joanne Iwaskiw, Bohdan Iwaskiw, and Alexander Iwaskiw[1] (Brian C. Lundquist, on the brief).

Noel Charron, respondent pro se.

Victoria Scallo Charron, respondent pro se.

PER CURIAM

Plaintiff appeals a summary judgment entered in favor of defendants, his neighbors. Plaintiff alleged in his chancery complaint that Alexander Iwaskiw, a teenager, operated a shop for repairing and selling lawn and gardening machines and parts out of his parents' home, and that this operation constituted a nuisance that ought to be abated. Plaintiff claims also that other neighbors – the Charron defendants – aided and abetted this nuisance. We agree with plaintiff that he presented sufficient evidence to support the claim that Alexander's operation constituted a private nuisance and, so, we conclude that the judge erred in granting summary judgment in defendants' favor.

The parties all live on the same residential street in Westwood. The Iwaskiw defendants live across the street from the Charron defendants. Plaintiff

---

[1] These attorneys represent respondents only as to the claims for injunctive relief and punitive damages.

lives a few doors down, on the opposite side from the Iwaskiw residence. Plaintiff alleged that starting in 2015, Alexander, who was then seventeen, engaged in the repair of lawn mowers, weed whackers, leaf blowers, snow blowers, chain saws, small motorcycles, and quad bikes outside his home. He claimed this was a business operated in violation of local ordinances and, notwithstanding, that Alexander's operation generated unreasonable noise, smoke and fumes because of the constant running and revving of engines[2]; he also claimed the demand for Alexander's services unduly increased traffic on their residential street.

Plaintiff asserted that because of Alexander's operation, he had to "periodically . . . close windows and [his] front door due to the noise and fumes, and often [would] hesitate to open [them] altogether." Even with windows and doors shut, the noise remained audible and annoying to plaintiff. Coupling all these circumstances, plaintiff asserted that Alexander's operation unreasonably interfered with the quiet enjoyment of his own property. And he claimed the Charron defendants aided and abetted the other defendants by storing some of

---

[2] Plaintiff alleged "[t]he noise generated by the defendants typically begins with short bursts of sound from someone repeatedly pulling on a starter cord . . . . If the engine starts, it is allowed to run, is accelerated, revved at high RPMs, and is eventually turned off."

A-3966-17T3

Alexander's equipment in their garage and receiving drop-offs from his customers.

Between September 2015 and June 2016, plaintiff sought the intervention of police and zoning officials – to no effect. Finally, in February 2017, he filed this action in General Equity, seeking injunctive relief and damages, which incorporated a claim that his property's value had been diminished by this alleged nuisance.

The case eventually reached the summary judgment stage. In one motion, defendants argued that plaintiff's $22,300 diminution claim – quantified by plaintiff's own calculations and through a reference, in part, to another neighbor's sale of a home – was unsupported by an expert and could not be further pursued. The judge granted that motion.

In another summary judgment motion, defendants argued that plaintiff's nuisance claim could not be sustained as a matter of law because, among other things, plaintiff failed to produce evidence that he suffered a personal injury. The judge agreed, stating in a written opinion that a private-nuisance claimant must show not only the alleged nuisance constituted "more than mere annoyance" but also caused a demonstrable injury to the plaintiff's health. The judge also held that plaintiff could not obtain injunctive relief even if

Alexander's operation violated local zoning laws or ordinances absent a finding that the business constituted a nuisance; the judge also found no zoning or ordinance violation because local officials made no attempt to abate the alleged nuisance. And finding their liability was linked to the liability of the Iwaskiw defendants, the judge dismissed the claim against the Charron defendants.

Plaintiff appeals. After careful consideration of the parties' arguments, we conclude that: (1) plaintiff provided sufficient evidence to support a claim that the Iwaskiw defendants created and maintained a private nuisance and, therefore, the judge erred by granting summary judgment in their favor; (2) plaintiff provided sufficient evidence that the Charron defendants aided and abetted the alleged nuisance so as to preclude the entry of summary judgment in their favor; but (3) the judge properly dismissed the claim for diminution damages because plaintiff failed to provide a supporting expert report. For these reasons, we reverse in part and remand for a trial on plaintiff's nuisance claim and a consideration of the appropriate remedy – including injunctive relief – should the judge find the existence of a private nuisance.

A-3966-17T3

I

A private nuisance is an "unreasonable interference with the use and enjoyment of land." Sans v. Ramsey Golf & Country Club, Inc., 29 N.J. 438, 448 (1959). Inevitably, such cases focus on the parties' conflicting property interests. That conflict must be resolved through a consideration of "the reasonableness of the defendant's mode of use of his land," and "[t]he utility of the defendant's conduct" balanced "against the quantum of harm" to the plaintiff arising from the neighbor's "unreasonable use" and whether the plaintiff's "comfort[] or existence" is disturbed to an unreasonable extent. Id. at 449.

Plaintiff claims he has lived in this residential zone since 1972. The Iwaskiw defendants moved into the neighborhood in 1991 and, years later, when Alexander was a teenager, he created the circumstances that plaintiff claims have disturbed the quiet enjoyment of his property. As a result, plaintiff alleges, his comfort has been burdened by the noise of combustible engines, the concomitant fumes and smoke, and unduly increased traffic. Considering these elements collectively or separately, we agree plaintiff presented enough evidence to avoid the entry of summary judgment.

For example, we have held that undue and unnecessary noise alone may constitute a private nuisance if the plaintiff shows "(1) injury to the health or

comfort of ordinary people to an unreasonable extent, and (2) unreasonableness under all the circumstances, particularly after balancing the needs of the maker to the needs of the listeners." See Traetto v. Palazzo, 436 N.J. Super. 6, 12 (App. Div. 2014) (citing Malhame v. Borough of Demarest, 162 N.J. Super. 248, 261 (Law Div. 1978), app. dis., 174 N.J. Super. 28 (App. Div. 1980)). The alleged unreasonable disturbance must rise above a mere annoyance; occasional noisy disturbances that cause, for example, "[t]he interruption of normal conversation, the drowning out of TV sound, an occasional disturbance during sleeping hours, and like complaints," may not be enough. Ibid. (quoting Malhame, 162 N.J. Super. at 261). But even "occasional noisy disturbances concomitant with residential living can rise to the level of nuisance if, based on proximity, magnitude, frequency, and time of day, they cause some residents 'more than mere annoyance, . . . temporary physical pain[,] and more than usual anxiety and fright.'" Id. at 12-13 (citing Malhame, 162 N.J. Super. at 263).

In Malhame, neighbors argued that a town's fire alarm siren system, in close proximity to the plaintiffs' residence, was a nuisance due to its frequency and its blaring nature. 162 N.J. Super. at 251-52. The plaintiffs did not seek medical attention or offer medical evidence showing health effects due to the sirens, nor did the court find any such impairments. Id. at 252. But the court

held that the siren system was a private nuisance; it caused temporary ear pain, "apprehensive, jittery, shakey feeling[s]," interrupted sleep, frightened children, and interrupted normal conversation. Id. at 253.[3]

Similarly, in Terhune v. Trs. of Methodist Episcopal Church of Matawan, 87 N.J. Eq. 195, 196-97 (Ch. 1917), the vice-chancellor found the pealing of church bells every hour on the hour, from 7 a.m. to 10 p.m., to be a private nuisance to the plaintiffs who lived about fifty feet from the church. The judge found that the startling nature of the bells would cause conversations to cease, at times shake the house, and prompt the plaintiffs to close their windows. Ibid.

Even if we assume the intensity of the noise coming from the Iwaskiw property hasn't risen to the decibel level of the fire signal in Malhame or the church bells in Terhune[4] – a matter that could not be resolved on this record by way of summary judgment – the alleged frequency of Alexander's activities, combined with smoke, fumes, and an increased level of traffic in this residential neighborhood, all certainly warranted the denial of summary judgment. As we

---

[3] The court did not enjoin use of the alarm system because plaintiffs did not establish an alternative system would not subject other residents to the same nuisance. Id. at 266.

[4] Indeed, common experience would suggest that the noise level here was likely more in line with the drum playing at question in Traetto, a case where we also reversed summary judgment entered in the defendant's favor.

said in Lieberman v. Saddle River Township, 37 N.J. Super. 62, 67 (App. Div. 1955), "the character, volume, frequency, duration, time, and locality are relevant factors." Thus, a sound of lesser intensity or volume than the fire signal in Malhame might nevertheless warrant injunctive relief when combined with other relevant circumstances. See Rose v. Chaikin, 187 N.J. Super. 210, 217 (Ch. Div. 1982).

The trial judge's decision seemed to chiefly rely on plaintiff's failure to assert a physical injury. An actual injury to one's health is not required to establish that fumes, smoke, or odor constitute a nuisance. Ross v. Denan, 101 N.J. Eq. 281, 282 (E & A 1927); Benton v. Kernan, 127 N.J. Eq. 434, 462 (Ch. 1940), modified, 130 N.J. Eq. 193 (E. & A. 1941). Discomfort is enough:

> Any business, however lawful, which causes annoyances that materially interfere with the ordinary comfort, physically, of human existence, is a nuisance that should be restrained; and smoke, noise, and bad odors, even when not injurious to health, may render a dwelling so uncomfortable as to drive from it anyone not compelled by poverty to remain.
>
> [Kosich v. Poultrymen's Serv. Corp., 136 N.J. Eq. 571, 575 (Ch. 1945) (emphasis added) (quoting Cleveland v. The Citizens Gas Light Co., 20 N.J. Eq. 201, 205 (Ch. 1869)).]

A-3966-17T3

Whether the noise, smoke or fumes wafting toward plaintiff's home were significant enough to render him uncomfortable was for the factfinder to consider. See Benton, 127 N.J. Eq. at 462.

A breach of governmental regulations in the use of property may also inform a determination that the property owner is maintaining a nuisance. Traetto, 436 N.J. Super. at 13. A regulatory violation may at times illuminate, amplify or even solely support a finding that property is being used in a way that unreasonably burdens neighboring properties. Plaintiff provided evidence that strongly suggested Alexander's operation is a business[5] that violates in whole or

_____

[5] The Iwaskiw defendants attempted to portray Alexander's operation as a mere hobby, but the record contains evidence of his sale of forty-seven items of machinery on Craigslist between July 2016 and March 2017. Most sold for a few hundred dollars; one sold for $1,700. Another older Craigslist account was apparently inaccessible, but the judge concluded that "[o]bviously . . . there was more" such evidence. The factual record also contained evidence that defendants held multiple garage sales, and Alexander rented out equipment as well. The trial judge suggested Alexander's repair services sounded like a business and the claim this was "a hobby" was simply "not true." Since plaintiff was entitled to a view of the evidence in the light most favorable to him, Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995), the judge correctly disregarded the claim that this was a mere hobby and not a business. We would add, however, that this hobby-business debate is something of a red herring. A property owner doesn't get to maintain a private nuisance by proving no pecuniary benefit was generated. An unduly noisy hobby may be a nuisance.

A-3966-17T3

in part local governmental regulations.[6]  This all goes into the mix in determining whether the Iwaskiw defendants have created and maintained a private nuisance.  Rose, 187 N.J. Super. at 218.

In viewing plaintiff's allegations against the standards we have explicated, we must conclude that plaintiff has presented sufficient evidence to defeat summary judgment.  Contrary to the trial judge's holding, which appeared to exalt the absence of evidence that plaintiff suffered a physical injury, plaintiff has alleged a persistent and continuous starting and running of lawn mowers and other similar types of machinery, well beyond weekly lawn mowings and weed wackings that any residential dweller would be expected to endure.  It was enough for plaintiff to assert that the noise, fumes and smoke was not just

---

[6] Westwood Zoning Ordinance § 195-130(I)(1) permits home-based businesses in residential zones so long as "[t]he use is limited to office use only, provided that this provision is only intended for such incidental activities as a virtual office.  Any observable business activity . . . is unlawful under this subsection." Furthermore, "[n]o nonresident employees, customers or business invitees or guests shall visit the dwelling unit for business purposes."  Id., § 195-130(I)(3). And the town expressly prohibits motorcycle sale and service businesses in all districts. Id., § 195-111(A)(5).  The judge mistakenly found significance in the fact that local officials and police refused to intervene; the failure to enforce has no bearing on whether a property owner is in violation of a local ordinance or restriction.  Morris v. Haledon, 24 N.J. Super. 171, 177 (App. Div. 1952).  To be sure, to seek to vindicate such a violation a private citizen must show "special damages," Sautto v. Edenboro Apartments, Inc., 84 N.J. Super. 461, 474 (App. Div. 1964), but that element is present here – if ultimately sustained at trial – via plaintiff's claim that the violation also constitutes an actionable nuisance.

occasional or intermittent but extensive enough to cause any reasonable person of ordinary sensibilities to be disturbed or inconvenienced.

In short, whether Alexander's operations rose beyond the level of a mere annoyance is ultimately a question for the factfinder. A "judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Brill, 142 N.J. at 540 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). We are satisfied that plaintiff provided sufficient evidence of a private nuisance and that the judge erred by granting summary judgment.

II

Plaintiff's claim against the Charron defendants was based on their storage of Alexander's equipment in their garage and other conduct, which, viewed in plaintiff's favor, demonstrated their active involvement in the alleged nuisance. Even if the evidence suggested only their incidental involvement, we agree the Charron defendants were not entitled to summary judgment because those allegations alone could, if credited at trial, support relief against them for aiding and abetting the alleged nuisance. But plaintiff also asserted that the Charron defendants were more extensively involved, referring to several occasions where

equipment was dropped off, serviced, or picked up at the Charron home. Such evidence, if proven, enhances the claim against the Charron defendants.

In any event, in light of plaintiff's factual allegations, and so long as there is a viable action against the other defendants, summary judgment was not available to the Charron defendants.

## III

We agree with defendants that plaintiff failed to provide sufficient evidence to support his claim that his property was devalued by defendants' alleged conduct. On plaintiff's devaluation claim, the appraisal method he offered required the support of an expert. See Ford Motor Co. v. Edison, 127 N.J. 290, 295, 303-04 (1992). Since such an expert report was not provided in discovery, the trial judge correctly rejected this assertion as an element of damage.

We would add, however, that the absence of proof of a devaluation of his property was not critical to plaintiff's nuisance claim. Its absence does not bar the imposition of injunctive relief,[7] nor does it bar any other compensatory

---

[7] This aspect of plaintiff's claim is dependent upon the presentation of clear and convincing evidence of a nuisance, Benton v. Kernan, 130 N.J. Eq. 193, 198 (E. & A. 1941), which is another way of saying that the issuance of an injunction must be preceded by the chancery judge's "caution, deliberation and sound

A-3966-17T3

damages that were proximately caused by this alleged nuisance. Nor is plaintiff's claim of punitive damages dependent upon a diminution in the value of plaintiff's property.

* * *

We affirm the order barring plaintiff from proving his property's diminution in value, but we otherwise reverse the orders under review and remand for further proceedings in conformity with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

discretion," Citizens Coach Co. v. Camden H.R. Co., 29 N.J. Eq. 299, 303 (E. & A. 1878); see also Waste Mgmt. of N.J., Inc. v. Morris Cty. Mun. Auth., 433 N.J. Super. 445, 452 (App. Div. 2013); Gen. Elec. Co. v. Gem Vacuum Stores, Inc., 36 N.J. Super. 234, 236 (App. Div. 1955).

A-3966-17T3